**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUSTIN THOMAS MILLER,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN LAMONTAGNE, Factory Superintendent; RICHARD O BUTCHER, Medical Doctor; and DAVID G. SMITH, Medical Doctor,<br><br>Defendants. | CASE NO. 10-CV-702-WQH (BGS)<br><br>**REPORT AND RECOMMENDATION TO GRANT DEFENDANT RICHARD O BUTCHER'S MOTION TO DISMISS AND DENY DEFENDANT RICHARD O BUTCHER'S MOTION TO STRIKE** |

Plaintiff Justin Thomas Miller, a state prisoner proceeding pro se and in forma pauperis, filed a Complaint on April 1, 2010, pursuant to 42 U.S.C. §1983. ("Compl.," Doc. No. 1.) Plaintiff's Complaint arises out of an injury he suffered while working at a prison shoe factory and the medical treatment he received following the injury. Miller brings claims for violations of his Eighth Amendment rights based upon freedom from cruel and unusual punishment and right to medical care. (*Id.*) On July 20, 2010, Defendant Richard O Butcher filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6) and a motion to strike punitive damages pursuant to Fed. R. Civ. Pro. 12(f). (Doc. Nos. 18 & 19.) Plaintiff filed a response in opposition to the motion to dismiss on August 2, 2010. (Doc. No. 22.) On August 16, 2010,

Defendant Butcher filed a reply in support of his motion to dismiss. (Doc. No. 26.) Plaintiff did not file an opposition to Defendant Butcher's motion to strike. On October 18, 2010, Plaintiff submitted two exhibits to the Court; however, they have no bearing on Defendant Butcher's instant motions before the Court. ( Doc. No. 34.)

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation ("R&R"). The Court determines that this matters is appropriate for resolution without oral argument and submits the motions on the parties' papers pursuant to Local Civil Rule 7.1(d)(1). For the reasons set forth below, the Court **RECOMMENDS** that Defendant Butcher's motion to dismiss be **GRANTED WITH LEAVE TO AMEND** and Defendant Butcher's motion to strike be **DENIED**.

## Background

Plaintiff Justin Thomas Miller is a prisoner currently incarcerated at Richard J. Donovan Correctional Facility, proceeding pro se and in forma pauperis on his Complaint filed pursuant to 42 U.S.C. §1983. (Compl. at 1.)[1] The Defendants named by Plaintiff in his Complaint include John LaMontagne, formerly employed by the California Prison Industry Authority ("CALPIA") as the Superintendent in charge of a prison shoe factory located at Donovan state prison; Richard O Butcher, a medical doctor employed by Alvarado Hospital Medical Center; Jose E. Otero, a medical doctor employed by Alvarado Hospital Medical Center; and David G. Smith, a medical doctor who provides orthopedic services to prisoners at Donovan state prison. (*Id*. at 2.) The following description of events is taken from the parties' pleadings relating to the medical care provided by Defendant Butcher, and is not to be construed as findings of fact by the Court.

On July 2, 2009, Plaintiff's finger was crushed while working as a machine operator at the shoe factory located at Donovan state prison. (*Id*. at 3.) After Plaintiff's hand was crushed, he was transported to the emergency room at Alvarado Hospital Medical Center. (*Id*. at 7.) An X-ray of Plaintiff's left hand showed a compound fracture of his third finger. (*Id*. at 7.)

---

[1] Citations to the complaint are to page numbers, as the complaint includes paragraphs assigned the same number.

1  Plaintiff also had multiple lacerations causing nerve and joint damage. (*Id.* at 7.) A pre-
2  operation history and a physical of Plaintiff was completed. (*Id.* at 7.) Defendant Richard O
3  Butcher, M.D., informed Plaintiff that he would be hospitalized for one week in order for an
4  operation to be performed on the third finger of his left hand. (*Id.* at 7.) Plaintiff requested
5  medication to alleviate his pain, and was issued Motrin. (*Id.* at 7.) Plaintiff complained to the
6  nurse that he was still in excruciating pain, but the nurse stated that Dr. Otero ordered only
7  Motrin to be issued for pain as a cost cutting measure. (*Id.* at 4.) After remaining shackled to
8  a hospital bed for one week, Dr. Otero informed Plaintiff that the hospital was no longer
9  accepting "I.O.U.'s" from the state for non-life threatening injuries. (*Id.* at 5.) Plaintiff was
10 discharged with a splint taped to his finger. (*Id.* at 5.) Approximately two weeks later Plaintiff
11 removed the splint, but his finger was still causing him severe pain. (*Id.* at 5.)

12     On August 5, 2009, Plaintiff had his finger X-rayed again at Donovan Correctional
13 Facility which showed that his finger was still fractured. (*Id.* at 5.) On August 24, 2009,
14 Defendant saw Dr. Smith regarding the continued pain he suffered from his finger. (*Id.* at 5.)
15 Dr. Smith sated that he had not been able to see Plaintiff earlier because of overcrowding. (*Id.*
16 at 5.) In an examination that lasted only 82 seconds, Dr. Smith said that the fracture had healed
17 and there was no further treatment available. (*Id.* at 5; Ex. J.) However, Plaintiff states his
18 finger never healed correctly causing him to suffer severe pain on a daily basis, continued
19 disfigurement, and partial range of motion loss. (*Id.* at 5.)

20                              **Discussion**
21 **I. Motion to Dismiss**
22 A. *Fed.R.Civ.P. 12(b)(6) Standard of Review*

23     A Rule 12(b)(6) dismissal may be based on either a " 'lack of a cognizable legal theory'
24 or 'the absence of sufficient facts alleged under a cognizable legal theory.' " *Johnson v.*
25 *Riverside Healthcare Sys., LP,* 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v.*
26 *Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). The plaintiff's complaint must
27 provide a "short and plain statement of the claim showing that [he] is entitled to relief." *Id.*
28 (citing Fed. R. Civ. P. 8(a)(2)).

1    The Court in *Ashcroft v. Iqbal,* 556 U.S. ----, 129 S.Ct. 1937, 1949 (2009), discerned
2 a two step process for evaluating a complaint under Rule 12.  First, the tenet that a court must
3 accept as true all of the allegations contained in a complaint is inapplicable to legal
4 conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere
5 conclusory statements, do not suffice.  *Id.*  Second, only a complaint that states a plausible
6 claim for relief survives a motion to dismiss.  *Id.* at 1950.  Determining whether a complaint
7 states a plausible claim for relief will be a context-specific task that requires the reviewing
8 court to draw on its judicial experience and common sense.  *Id.*  The complaint must allege
9 enough factual content to "nudge" the claim "across the line from conceivable to plausible.
10 *Id.* at 1952.  If there are other, more likely explanations, the complaint is not plausible. *Id.* at
11 1951.
12    Notwithstanding, factual allegations asserted by pro se petitioners, "however inartfully
13 pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers."
14 *Haines v. Kerner,* 404 U.S. 519, 520 (1972); *see also Erickson v. Pardus*, 551 U.S. 89, 94
15 (2007) (reaffirming that this standard still applies to pro se pleadings post-*Twombly*).  Thus,
16 where a plaintiff appears pro se in a civil rights case, the Court must construe the pleadings
17 liberally and afford plaintiff any benefit of the doubt. *Hebbe v. Pliler,* 627 F.3d 338, 342 (9th
18 Cir. 2010) (citations omitted).
19 B. *42 U.S.C § 1983 Standard*
20    To state a claim under § 1983, a plaintiff must allege the violation of a right secured by
21 the Constitution and laws of the United States, and must show that the alleged deprivation was
22 committed by a person acting under color of state law. *Parratt v. Taylor,* 451 U.S. 527, 535
23 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331
24 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149 (1978).
25    Plaintiff  seeks to fulfill the first requirement by alleging a violation of his right to
26 adequate medical care secured by the Eighth Amendment under *Estelle v. Gamble,* 429 U.S.
27 97 (1976).  However, the threshold issue which must be addressed is whether Plaintiff has
28 sufficiently alleged that Defendant Butcher was acting under color of state law when he

rendered medical services to Plaintiff.

1. *Under Color of State Law*

To determine whether a private actor acts under color of state law, the Court must evaluate whether the alleged infringement of federal rights is "fairly attributable" to the government even though committed by private actors. *Kirtley v. Rainey,* 326 F.3d 1088, 1092 (9th Cir. 2003); *see also West v. Atkins,* 487 U.S. 42, 49 (1988) ("To constitute state action, the deprivation must be caused by the exercise of some right or privilege created by the State or by a person for whom the State is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor." (internal punctuation omitted)). Determining what is fairly attributable to the government "is a matter of normative judgment, and the criteria lack rigid simplicity. . . . [N]o one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295-96 (2001). There must be "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Id.* at 295 (internal quotation marks omitted); *see also Single Moms, Inc. v. Mont. Power Co.,* 331 F.3d 743, 747 (9th Cir. 2003).

Because of the fact-intensive nature of the inquiry, courts have developed a variety of approaches to assess whether a private party has acted under color of state law. *Lee v. Katz,* 276 F.3d 550, 554 (9th Cir. 2002). The Ninth Circuit has recognized at least four such criteria, or tests: (1) public function, (2) joint action, (3) governmental compulsion or coercion, and (4) governmental nexus. *Kirtley,* 326 F.3d at 1092; *Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826, 835-36 (9th Cir.1999). The established criteria are helpful in determining the significance of state involvement, and "[s]atisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists." *Kirtley,* 326 F.3d at 1092.

Under the "public function" analysis, state action is present "in the exercise by a private entity of powers traditionally exclusively reserved to the State." *Caviness v. Horizon Cmty. Learning Ctr., Inc.,* 590 F.3d 806, 814 (9th Cir. 2010) (quoting *Jackson v. Metro. Edison Co.,*

419 U.S. 345, 352 (1974)). For example, in *West v. Atkins*, 487 U.S. 42 (1988), the Supreme Court held that a private physician acted under color of state law when the physician contracted with the state to provide medical services to prisoners at state-prison hospitals. *Id.* at 54. A prisoner filed a civil-rights action against such a physician alleging that the physician violated the prisoner's Eighth Amendment rights by failing to provide necessary medical treatment. *Id.* at 45. The Court held that the physician's conduct could "fairly be attributed to the State" because the state "bore an affirmative obligation to provide adequate medical care to [the prisoner]; the State delegated that function to respondent [physician]; and respondent voluntarily assumed that obligation by contract." *Id.* at 55-56. The Court found significant the prison's policy prohibiting the prisoner from employing or electing "to see a different physician of his own choosing." *Id.* at 44. The Court held, "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *Id.* at 56; *see also, e.g., Lee,* 276 F.3d at 554-55.

The Court concludes that Plaintiff has alleged sufficient facts that plausibly support an inference that Defendant Butcher was acting under the color of state law while providing medical services to Plaintiff. Although Plaintiff has not specifically alleged a contractual agreement between Defendant Butcher or his employer, Alvarado Hospital, and the State, Plaintiff has alleged sufficient facts that would allow the Court to reasonably draw such an inference. Plaintiff was a prisoner at Donovan state prison. After suffering the alleged injury he was transported to Alvarado Hospital where he was attended to by Defendant Butcher. Given his status as a prisoner, he was not simply free to choose his own medical care but was directed by prison authority to be treated at Alvarado hospital. That Defendant Butcher admitted Plaintiff to the floor supports an inference that the hospital had some arrangement to admit Donovan prisoners.

There is nothing in this case to meaningfully distinguish it from *West*. Defendant argues that this case is distinguishable because Defendant did not perform any medical services at a prison or prison hospital. While the physicians in *West* did provide medical services at a state

prison hospital, the Court did not focus on this fact as a threshold issue in determining whether a private physician can act under the color of state law. Rather than focusing on the physical location where the medical services were performed, the *West* Court emphasized the significance of the State's allocation of its medical obligations to the physician, and the physician's acceptance of this obligation. *West*, 487 U.S. at 45; *see also George v. Sonoma County Sheriff's Dept.,* 2010 WL 3155690 (N.D. Cal. Aug. 9, 2010) (holding private physicians acted under the color of state law when providing medical services to inmates at a privately owned facility.) Thus, Plaintiff has alleged sufficient facts, especially given the more liberal pleading standard afforded to pro se litigants, that would support that Defendant Butcher was acting under the color of state law while providing medical services to Plaintiff.

  2. *Violation of Constitutional Right: Eighth Amendment*

  To state a viable § 1983 claim, a Plaintiff must also sufficiently allege the violation of a constitutional right. Plaintiff has alleged Defendant Butcher violated his Eighth Amendment rights. Prison officials violate the Eighth Amendment if they act with deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). A plaintiff alleging such a violation must satisfy a two-part test containing both an objective and a subjective component. *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted). A plaintiff must prove that the defendant prison official (1) deprived him of the "minimal civilized measure of life's necessities;" and (2) acted with deliberate indifference by denying, delaying or intentionally interfering with medical treatment. *Id.* A prisoner's civil rights will only be abridged if "the indifference to his medical needs [is] substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.,* 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle,* 429 U.S. at 105-06).

  A prison official acts with deliberate indifference only if the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). "If a prison official should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Toguchi v. Chung,* 391 F.3d 1051, 1057 (9th Cir. 2004) (quotation omitted). "Deliberate indifference is a high

legal standard." *Id.* at 1060. Where a prisoner alleges delay in receiving medical treatment, he must show that the delay led to further harm. *See Shapely v. Nevada Bd. of State Prison Comm'rs,* 766 F.2d 404, 407 (9th Cir. 1985) (citing *Estelle,* 429 U.S. at 106). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106.

Step one of the *Iqbal* analysis requires identification of allegations in the complaint that are not entitled to the assumption of truth due to their conclusory nature. In his complaint, Plaintiff makes the conclusory allegation that Defendant Butcher acted with deliberate indifference to his serious medical needs. (Compl. at 4, ¶1.) This statement in itself is disentitled to the presumption of truth. However, the Court deems that said conclusion provides a framework for the factual allegations supporting this claim.

Step two of the *Iqbal* analysis provides for a determination of whether the factual allegations of "deliberate indifference" plausibly suggest an entitlement to relief. Plaintiff alleges that Defendant Butcher informed him that he would be hospitalized for one week in order for an operation to be performed on the third finger. (Compl. at 7, ¶5.) Plaintiff cites to Exhibit E[2] to the Complaint for support of this allegation. Exhibit E, Pre-Op History and Physical by defendant Butcher, contradicts Plaintiff's allegation, stating, "The patient is admitted for acute care and further evaluation." This Exhibit goes on to state that Defendant Butcher "will ask Jose Otero, MD to evaluate status. The patient may need some debridement, further care."

Plaintiff next alleges that defendant Otero informed him that the hospital was no longer accepting I.O.U.'s from the state. He was discharged without the compound fracture being set. (Compl. at 8, ¶8.) The inference Plaintiff makes is that he was kicked out of the hospital without having been given the required medical care. He points to Exhibit F to the Complaint for support of this allegation.

---

[2] A court may consider documents attached to the complaint when ruling on a Rule 12(b)(6) motion to dismiss "without converting the motion to dismiss into a motion for summary judgment." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Exhibit F, Transfer Summary, prepared by Defendant Butcher, does not support any of these allegations of indifference. Defendant Butcher provides that, "The patient was seen by Dr. Otero, plastic surgeon, who reviewed x-rays and felt the patient did not need surgical intervention. The patient is stable at this time. We will plan on discharging him back to the facility." Defendant Butcher then lists 7 Discharge Medications. He notes that the patient (Plaintiff) is okay for general population.

Plaintiff's last factual allegation against Dr. Butcher states that his third finger did not heal correctly causing him to suffer severe pain and continued disfigurement/motion loss. (Compl. at 8, ¶11.) Exhibit J to the Complaint directly contradicts this allegation. Dr. Smith, who conducted a medical examination on the finger on August 24, 2009, writes, "A recent x-ray shows the nondisplaced fractures in the proximal phelanx to be completely healed."

The Court concludes the attached exhibits do not establish that Plaintiffs factual allegations are plausible. The more likely explanation is that Plaintiff received adequate medical care. Exhibit E is a Pre-op History and Physical of Plaintiff when he was admitted to Alvarado Hospital and states:

> **History of present illness**: X-ray shows a stellate fracture of the proximal phalanx which does not involve either articular surface. The patient is admitted for acute care and further evaluation.
> **Plan:** The patient is admitted to the floor. Will keep on IV antibiotics: Ancef. Will ask Jose Otero, MD, to evaluate status. The patient may need debridement, further care. Will admit the patient on the floor. Will continue Ancef IV. Will ask Dr. Otero to evaluate and give medicine for pain control.

(Compl. Ex. E.)

This exhibit does not support Plaintiff's position that Defendant Butcher in any way denied, delayed, or intentionally interfered with Plaintiff's medical care. As the admitting physician, Defendant Butcher recognized that Plaintiff had a fractured finger, admitted him to the floor, provided him with antibiotics and recommended follow up care by Dr. Otero to see if any surgery was necessary.

In reviewing Exihibit F, the Transfer Report, it appears that Dr. Butcher was aware that Dr. Otero consulted with Plaintiff, and noted that Dr. Otero felt that Plaintiff did not require

surgical intervention. (Compl. Ex. F.) Based on these consultations, Defendant Butcher discharged the Plaintiff with orders to not partake in work detail for two weeks and with instructions for seven different medications. Plaintiff's allegations and the exhibits offered in support do not allow the court to draw a reasonable inference that Defendant Butcher "knew of and disregarded an excessive risk to inmate health or safety."*Farmer,* 511 U.S. at 834. Accordingly, the Court finds that Plaintiff has not alleged sufficient facts to state a claim against Defendant Butcher for a violation of his Eighth Amendment rights based on deliberate indifference. His pleadings do not meet the standard necessary to comply with Rule 8.

*3. Leave to Amend*

"A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)*; see also Lopez v. Smith*, 203 F.3d 1122, 1126-1130 (9th Cir. 2000). This is not a situation where it is absolutely clear that Plaintiff cannot cure the deficiencies noted above. Therefore, the Court recommends that Defendant's Motion to Dismiss be granted with leave to amend.

## II. Motion to Strike

Defendant Butcher has moved to strike, pursuant to Fed. R. Civ. Pro. 12(f), punitive damages from the Complaint. Rule 12(f) states that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Defendant argues the Court should strike Plaintiff's request for punitive damages under Cal. Civ. Pro. § 425.13, which prohibits any claim for punitive damages arising out of a professional negligence claim against a health care provider. However, Defendant's reliance on this section is misplaced. Plaintiff filed a complaint based on 42 U.S.C. § 1983, which is not a claim arising out of medical negligence. *See Estelle*, 429 U.S. at 106. Defendant has also failed to cite any controlling authority applying Cal. Civ. Pro. § 425.13 to strike punitive damages in the context of a prisoner § 1983 suit.

Furthermore, the Ninth Circuit has held that Rule 12(f) does not authorize a district court to strike a claim for damages on the ground that such claims are precluded as a matter

of law. *Whittlestone Inc. V. Handicraft Co.*, 618 F.3d 970, 974-75 (9th Cir. 2010). Rather such a motion should be made pursuant to Rule 12(b)(6). *Id.* However, even if the Court were to examine the merits of the Motion to Strike as a Rule 12(b)(6) motion under *Whittlestone*, the Court would deny the motion on the substantive grounds noted above. Therefore, the Court recommends Defendant's Motion to Strike Punitive Damages be Denied without prejudice.

### Conclusion and Recommendation

For the reasons stated above, the Court recommends that Defendant Butcher's Motion to Dismiss be **GRANTED WITH LEAVE TO AMEND** and Defendant Butcher's Motion to Strike be **DENIED WITHOUT PREJUDICE**. This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. §636(b)(1).

**IT IS HEREBY ORDERED** that no later than **February 18, 2011**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties within **10 days** of being served with the objections.

**IT IS SO ORDERED.**

DATED: January 28, 2011

**BERNARD G. SKOMAL**
United States Magistrate Judge