1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11 | JUSTIN THOMAS MILLER,

12 |                              Plaintiff,

13

14 |    vs.

15

16

17

18 | JOHN LAMONTAGNE, Factory
Superintendent; RICHARD O
19 | BUTCHER, Medical Doctor; and DAVID
G. SMITH, Medical Doctor,

20 |                              Defendants.

21

CASE NO. 10-CV-702-WQH (BGS)

**REPORT AND RECOMMENDATION TO:**

**(1) GRANT DEFENDANT RICHARD O BUTCHER'S MOTION TO DISMISS [Doc. No. 48];**

**(2) GRANT IN PART AND DENY IN PART DEFENDANTS LAMONTAGNE AND SMITH'S MOTION TO DISMISS [Doc. No. 50]; &**

**(3) GRANT DEFENDANT OTERO'S MOTION TO DISMISS [Doc. No. 51]**

22
23
24
25
26
27
28

Plaintiff Justin Thomas Miller, a state prisoner proceeding pro se and in forma pauperis, filed a First Amended Complaint on March 30, 2011, pursuant to 42 U.S.C. §1983. ("FAC," Doc. No. 46.)  Plaintiff's FAC arises out of an injury he suffered while working at a prison shoe factory and the medical treatment he received following the injury.  Miller brings claims for violations of his Eighth Amendment rights based upon right to safety and right to medical care.  (*Id.*)  Pending before the Court are several motions filed by Defendants.

On April 8, 2011, Defendant Richard O Butcher filed a motion to dismiss the FAC and Plaintiff's request for punitive damages pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 48.) Plaintiff filed a response in opposition to the motion to dismiss on April 19, 2011. (Doc. No. 52.) On April 22, 2011, Defendant Butcher filed a reply in support of his motion to dismiss. (Doc. No. 53.)

On April 13, 2011, Defendants John LaMontagne and David Smith filed a motion to dismiss the FAC and Plaintiff's request for injunctive relief pursuant to Fed. R. Civ. P. 12(b)(6) and a request for judicial notice. (Doc. No. 50.) Plaintiff filed a response in opposition on April 26, 2011. (Doc. No. 54.) Defendants LaMontagne and Smith filed a reply in support of their motion on May 10, 2011. (Doc. No. 56.)

On April 14, 2011, Defendant Jose Otero filed a motion to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 51.) Plaintiff did not file a response in opposition. On May 2, 2011, Defendant Otero filed a reply in support of his motion to dismiss. (Doc. No. 55.)

These matters have been referred to the undersigned Magistrate Judge for a Report and Recommendation (R&R). The Court determines that these matters are appropriate for resolution without oral argument and submits the motions on the parties' papers pursuant to Local Civil Rule 7.1(d)(1). For the reasons set forth below, the Court **RECOMMENDS** that Defendant Butcher's motion to dismiss be **GRANTED WITHOUT LEAVE TO AMEND,** Defendants LaMontagne and Smith's motion to dismiss be **GRANTED IN PART AND DENIED IN PART**, and Defendant Otero's motion to dismiss be **GRANTED WITH LEAVE TO AMEND**.

### Background

Plaintiff Justin Thomas Miller is a state prisoner proceeding pro se and in forma pauperis on his First Amended Complaint filed pursuant to 42 U.S.C. §1983. (FAC at 1.)[1] The Defendants named by Plaintiff in his FAC include John LaMontagne, formerly employed by the California Prison Industry Authority ("CALPIA") as the Superintendent in charge of a

---

[1] Citations to the complaint are to page numbers, as the complaint includes paragraphs assigned the same number.

prison shoe factory located at Donovan state prison; Richard O Butcher, a medical doctor employed by Alvarado Hospital Medical Center; Jose E. Otero, a medical doctor employed by Alvarado Hospital Medical Center; and David G. Smith, a medical doctor who provides orthopedic services to prisoners at Donovan state prison.  (*Id.* at 2-3.)  The following description of events is taken from the parties' pleadings and is not to be construed as findings of fact by the Court.

**Plaintiff's Injury**

Plaintiff was employed by CALPIA as a machine operator at the shoe factory located at Donovan state prison.  (*Id.* at 3.)  On June 29, 2009, Plaintiff reported for work and discovered two safety hazards on the shoe producing machine he was assigned to operate: the control panel for this shoe producing machine was completely loose and not fastened to the work area platform as it usually was, and one of the bottom shoe plates located inside of the machine was completely loose and not fastened with Allen-type screws to the machine.  (*Id.* at 3.)  Plaintiff has provided the service instructions for the machine.  The manual provides that "[t]he electric control cabinet is to be connected to the rotary table, to the injection unit as well as to the hydraulic power equipment, by means of marked plugs and sockets which cannot be misused."  (Doc. No. 46-1, Ex. D at 17.)  The manual further provides that the "bottom plate is centered and then secured in its position, with the side moulds open, by means of the Allen-type screw in the insert."  (*Id.* at 18.)

Plaintiff  had been assigned to this machine for ten months, and the control panel and all of the shoe plates had always been fastened down until after a factory inventory that took place in June 2009.  (FAC at 3; Doc. No. 46-1, Ex. A.)  Plaintiff immediately reported the condition of the machine to his supervisor, who stated that all repairs had to be approved by Superintendent John LaMontange.  (FAC at 3.)  Plaintiff then showed LaMontange the safety issues with the machine and explained that he had to place his hand inside the machine to adjust the loose bottom shoe plate seconds before the machine rotated and the hydraulic steel shoe last automatically came down on the shoe plate.  (*Id.* at 4.)  LaMontange told Plaintiff to not worry about the loose shoe plate and to "just make shoes."  (*Id.* at 4.)  Plaintiff complained

to LaMontagne that the condition of the machine, with loose control panel, shoe plates and no safety gate, was cruel and unusual punishment. (*Id.* at 4.) LaMontagne responded, "I don't give a (expletive), inmates have no constitutional rights in my factory. If you don't like it, then 602 it." (*Id.* at 4.) Plaintiff requested a grievance form that same evening via institutional mail. (*Id.* at 4; Doc. No. 46-1, Ex. B.)

On July 2, 2009 at 2:30 p.m., Plaintiff adjusted the still loose bottom shoe plate by hand. (FAC at 4-5.) When the machine rotated, Plaintiff's glove became caught on a lasting pin, pulling Plaintiff to where the hydraulic steel shoe last automatically came down, crushing Plaintiff's finger. (*Id.* at 5.) Plaintiff was able to free his hand before the machine rotated again. (*Id.* at 5.) Plaintiff filed a grievance regarding the incident. (*Id.* at 5; Doc. No. 46-1, Ex. C.)

Plaintiff returned to work in the shoe factory on September 14, 2009, and was ordered by LaMontagne to continue working at the same machine. (FAC at 5; Doc. No. 46-1, Ex. C.) Plaintiff complied to avoid disciplinary action. (FAC at 5.) LaMontagne retired from the shoe factory in November 2009, and the safety hazards were fixed after LaMontagne retired, as the control panel and bottom shoe plates are now fastened down. (*Id.*)

The First Level Appeal decision from Plaintiff's inmate grievances regarding the safety of the machine noted that "[t]he control panel, the equipment in question that [Plaintiff] refer[s] to cannot be bolted down as per factory design; it must be movable to adjust for operator's comfort level."[2] (Doc. No. 1, Ex. C at 25.) The decision further noted that the machine "was removed from production for [one] day to verify that all safety devices were in good working condition" and that "the shoe plate is a self-adjusting mechanism that requires no hand adjustment as [Plaintiff] describe[s]." (*Id.*)   The Director's Level Appeal Decision from Plaintiff's inmate grievances found, after a thorough examination of Plaintiff's appeal issues and the supporting documents provided by the institution, that "the machinery that [Plaintiff]

---

[2] Defendants Lamontagne and Smith request that the Court take judicial notice of the allegations contained in Plaintiff's initial complaint, as well as certain documents attached thereto. The Court will consider the documents attached to Plaintiff's initial complaint identified as Exhibits C and I in deciding the current motion to dismiss. (*See*, *infra*, at 8 & n.3.)

asserts was faulty was inspected for safety and found to be in appropriate working order." (Doc. No. 46-1, Ex. C at 13.)

**Plaintiff's Medical Care**

After Plaintiff's finger was crushed on July 2, 2009, X-rays were taken and a splint was taped to Plaintiff's finger at Donovan. (FAC at 7.) Dr. Ruiz at Donovan felt Plaintiff required further medical care and had Plaintiff transported to the emergency room at Alvarado Hospital Medical Center ("Alvarado"). (*Id*.) Defendants Butcher and Otero treated Plaintiff at Alvarado. Dr. Butcher reviewed an X-ray of Plaintiff's hand, which showed compound fractures of his finger. (*Id*.) Plaintiff also had nerve and joint damage from multiple lacerations and puncture wounds caused by the steel cleats crushing his finger. (*Id*.) A pre-operation history and a physical of Plaintiff was completed by Dr. Butcher. (*Id*.; Doc. No. 46-1, Ex. F.) Dr. Otero completed a surgery consultation. (FAC at 7; Doc. No. 46-1, Ex. G.) Dr. Butcher informed Plaintiff that he would be hospitalized for one week in order for an operation to be performed on the third finger of his left hand. (FAC at 7.) Plaintiff requested medication to alleviate his pain, and Dr. Butcher responded that he would ask Dr. Otero. (*Id*. at 8.) Plaintiff was prescribed Motrin and Tylenol with Codeine for pain control. (*Id.* at 8; Doc. No. 46-1, Exs. G & I.) On July 3, 2009, Plaintiff complained to Drs. Butcher and Otero that he was still in excruciating pain, but did not receive adequate pain medication. (FAC at 8.) After remaining shackled to a hospital bed from July 2 to July 6, 2009, Plaintiff was discharged with a splint taped to his finger. (*Id*. at 5.) Plaintiff alleges that he should have received an open reduction operation, the injured finger set in a soft hand splint, a sling to provide support and keep the injury elevated, physical therapy, and adequate pain medication. (*Id.*)

After returning to Donovan, Dr. Silva examined Plaintiff's injury on July 13, 2009. (*Id.* at 9.) Dr. Silva was shocked that no surgery, soft hand splint, or sling had been provided to Plaintiff by Defendants. (*Id.* at 9.) Dr. Silva felt further medical care was needed and referred Plaintiff to the orthopedic surgeon. (*Id.* at 9; Doc. No. 46-1, Ex. J.) Dr. Silva also ordered the medical staff to re-do the splint on Plaintiff's finger so that it immobilized both the MCP and PIP joints, as the splint Plaintiff received at Alvarado only immobilized the PIP joint. (FAC

at 9-10; Doc. No. 46-1, Ex. K.) A posterior short hand splint that acted as a soft cast was applied to Plaintiff's finger.  (FAC at 9-10.)  Dr. Silva ordered Plaintiff to keep his hand elevated at all times in order to reduce the swelling in his finger. (*Id.* at 10; Doc. No. 46-1, Ex. K.)

On July 20, 2009, Plaintiff again saw Dr. Otero and showed Dr. Otero that his finger was still swollen, fractured, and causing severe sensitivity and pain. (FAC at 10.)  Dr. Otero removed the short hand splint soft cast from Plaintiff's finger and ordered Plaintiff to continue working. (*Id.*)

On July 30, 2009, Dr. Sedighi examined Plaintiff's finger at Donovan. (*Id.* at 10-11.)  Dr. Sedighi referred Plaintiff, whose finger was still swollen and painful, to an orthopedic surgeon and ordered additional X-rays. (*Id.* at 11.)  On August 5, 2009, Plaintiff had his finger X-rayed again at Donovan, which showed that his finger was still fractured. (*Id.* at 11; Doc. No. 46-1, Ex. N.)

On August 24, 2009, Dr. Smith examined Plaintiff's finger at Donovan.  Dr. Smith was the only orthopedic surgeon employed at Donovan at the time. (FAC at 13.)  Dr. Smith stated that he had not been able to see Plaintiff earlier because of overcrowding. (*Id.*)  Dr. Smith's examination of Plaintiff lasted a total of 82 seconds. (*Id.*)  Dr. Smith, in reviewing recently taken X-rays, noted that the X-ray revealed that the fractures had completely healed. (*Id.* at 11; Doc. No. 46-1, Ex. O.)  However, Plaintiff showed Dr. Smith that his finger was still swollen, sensitive, stiff, had a partial range of motion loss, and had nerve damage and uncontrollable shaking. (FAC at 13; Doc. No. 46-1, Ex. O.)  Plaintiff also complained that he was not being provided any medication for the extreme pain he suffered on a daily basis. (FAC at 13.)  Dr. Smith advised Plaintiff to continue to soak his finger in water. (*Id.* at 13-14.)  Dr. Smith's notes from his examination state that Plaintiff "needs to continue working on vigorous range of motion of the finger but there is really no other treatment necessary at this point in time." (*Id.* at 13-14; Doc. No. 46-1, Ex. O.)  Dr. Smith also noted that he informed Plaintiff "that this would take a fair amount of time, but that over time he should be expected to hopefully gain full range of motion." (FAC at 13-14; Doc. No. 46-1, Ex. O.)

On December 3, 2010, Plaintiff saw another medical doctor who opined that Plaintiff's finger required surgery and orthopedic consultation.  (FAC at 14.)  The exhibit provided by Plaintiff to support this allegation is undated, does not include Plaintiff's name or inmate identification number, does not include a doctor's name or other identification, and in no other way indicates that it relates to Plaintiff.  (*See* Doc. No. 46-1, Ex. P.)

Plaintiff continues to suffer chronic pain, stiffness, disfigurement, and uncontrollable shaking in his finger.  (FAC at 14.)

**Discussion**

**I**. **Legal Standard**

    **A. Rule 8 and Rule 12(b)(6) Standards**

The plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed.R.Civ.P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper...." *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citing *Cooper v. Bell*, 628 F.2d 1208, 1210 n.

2 (9th Cir.1980)). The court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading...." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002); *Stone v. Writer's Guild of Am. W., Inc.*, 101 F.3d 1312, 1313–14 (9th Cir.1996). Here, Plaintiff has attached various exhibits to his FAC and the Court will consider these exhibits in deciding the instant motions.  Additionally, Plaintiff's FAC contains allegations relying on the contents of exhibits C and I attached to his initial Complaint, but not included with his FAC.  Although not physically attached to his FAC, the Court will also consider these exhibits in deciding the instant motion, as no party has questioned their authenticity.[3]

### B. Standards Applicable to Pro Se Litigants

Factual allegations asserted by pro se plaintiffs, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (reaffirming that this standard still applies to pro se pleadings post-*Twombly*). Thus, where a plaintiff appears pro se in a civil rights case, the Court must construe the pleadings liberally and afford plaintiff any benefit of the doubt.  *Hebbe v. Pliler,* 627 F.3d 338, 342 (9 th Cir. 2010) (citations omitted). In giving liberal interpretation to a pro se civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir.1984) (finding

---

[3]Defendants Lamontagne and Smith also request that the Court take judicial notice of the allegations contained in Plaintiff's initial complaint, as well as certain documents attached thereto.  Courts may take judicial notice of facts whose "existence is 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonable questioned.'" *W. Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1192 n.4 (9th Cir. 2008) (quoting Fed. R. Evid. 201(b)).  While the filing of Plaintiff's initial complaint is capable of accurate and ready determination, the facts alleged therein are not.  A court cannot take judicial notice of (and assume the truth of) mere allegations.  *See Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 317 n.* (4th Cir. 2004).  Defendants have not provided any authority for a court taking judicial notice of the truth of allegations made in a previous complaint.

conclusory allegations unsupported by facts insufficient to state a claim under §1983). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones*, 733 F.2d at 649 (internal quotation omitted).

Nevertheless, the Court must give a pro se litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.2000) (en banc) (quotation omitted) (citing *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir.1987)). Thus, before a pro se civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies. *Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623–24 (9th Cir. 1988). But where amendment of a pro se litigant's complaint would be futile, denial of leave to amend is appropriate. *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir.2000).

## C.  Stating a Claim under 42 U.S.C. §1983

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149 (1978).

## II.  Analysis

### A.  Plaintiff's claim against Defendant LaMontagne

Plaintiff claims that Defendant LaMontagne violated his Eighth Amendment right to safety. (Doc. No. 46 at 3-6.)  To establish a violation of his right to safety, an inmate must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. *See id.* at 837. The very obviousness of the risk may suffice to establish the knowledge element. *See Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison

officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. *See Farmer*, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir.1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. *See Farmer*, 511 U.S. at 844.

Defendant LaMontagne moves to dismiss Plaintiff's FAC, arguing that Plaintiff fails to allege facts showing that LaMontagne knew he was subjecting Plaintiff to a substantial risk of serious harm.[4] (Doc. No. 50-1 at 8-10.) The Court disagrees. Plaintiff sufficiently alleges facts, that accepted as true, state a plausible claim that he was subjected to a substantial risk of serious harm. Plaintiff alleges that he had been assigned to the same machine for ten months, and that in those ten months the control panel and shoe plates were always fastened down prior to an inventory conducted in June 2009. When Plaintiff discovered the condition of the control panel and size 13 shoe plate on the machine, he reported his safety concerns to his supervisor and then to LaMontagne, who directed Plaintiff to keep making shoes on the machine. The alleged unsafe condition of the machine accompanied by the direction of LaMontagne for Plaintiff to keep using it to make shoes, increased the inherent dangerousness of the loose parts on the machine.[5] *See Morgan v. Morgensen*, 465 F.3d 1041 (9th Cir. 2006) (finding prisoner stated a right to safety claim when alleging that he reported to supervisor that printing press was defective and dangerous, supervisor told him to keep printing, and had

---

[4]Defendant LaMontagne does not dispute that Plaintiff sufficiently alleges LaMontagne acted under color of state law in his capacity as Superintendent in charge of the Donovan prison shoe factory at the time Plaintiff was injured.

[5]The Court notes that the Director's Level Appeal Decision following Plaintiff's injury states that "alleged faulty machine was taken out of service for a day and was verified to be in good working order." (Doc. No. 46-1, Ex. C.) However, there is nothing in the record before the Court or within Defendant LaMontagne's moving papers showing that Defendant LaMontagne, after receiving Plaintiff's complaint and prior to his injury, had the machine inspected to insure it was in good working order.

finger torn off by press); *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (finding plaintiff stated a claim for relief when he alleged prison official ordered him to continue working after plaintiff had informed official that the ladder was unsafe). Plaintiff also attaches the manual for the machine, which indicates that shoe plates are to be fastened down with Allen-type screws. Plaintiff further alleges that only days after reporting the safety issues, Plaintiff's finger was crushed when his glove became caught in adjusting the loose shoe plate. Although the decisions on Plaintiff's inmate grievances indicate that the machine was removed for one day, inspected, and found to be in proper working order, Plaintiff alleges that following LaMontagne's retirement, the alleged safety issues were fixed as the control panel and shoe plates are once again fastened down. Given these factual allegations, the Court finds that Plaintiff sufficiently alleges that he was incarcerated under a condition presenting a substantial risk of serious harm to survive a motion to dismiss.

The Court also finds that Plaintiff sufficiently alleges facts stating a plausible claim that LaMontagne subjectively knew of the risk to Plaintiff's safety and disregarded the risk. Plaintiff alleges that on June 29, several days before he was injured, he informed LaMontagne of the detached control panel and size 13 shoe plate and explained to LaMontagne the need for him to hand adjust the shoe plate. Plaintiff alleges that LaMontagne did not remedy the safety issues or have Plaintiff work on another machine, but told Plaintiff not to worry about the loose shoe plate and to "just make shoes." *See Gill*, 824 F.2d at 195. Plaintiff further alleges that after his finger was crushed and he returned to work, LaMontagne had Plaintiff continue to work on the same machine that still had the same safety issues. Plaintiff alleges the machine continued to have the same safety issues until LaMontagne retired in November 2009. Defendant LaMontagne does not argue that he was unaware of Plaintiff's complaints. (*See* Doc. No. 50-1.)

The Court finds that Plaintiff's allegations give rise to a reasonable inference that the condition of the machine was objectively a substantial risk to Plaintiff's safety, that LaMontagne subjectively knew of this risk, and that LaMontagne disregarded the risk. *See Iqbal*, 556 U.S. ----, 129 S.Ct. at 1949. Accordingly, the Court recommends denying Defendant

LaMontagne's motion to dismiss Plaintiff's claim against him for a violation of Plaintiff's Eighth Amendment right to safety.

## B. Plaintiff's claims against Defendants Butcher, Otero, and Smith

Plaintiff claims that Defendants Butcher, Otero, and Smith violated his Eighth Amendment right to adequate medical care. (FAC at 7-12.) Prison officials violate the Eighth Amendment if they act with deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). A plaintiff alleging such a violation must satisfy a two-part test containing both an objective and a subjective component. *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted). A plaintiff must prove that the defendant prison official (1) deprived him of the "minimal civilized measure of life's necessities;" and (2) acted with deliberate indifference by denying, delaying or intentionally interfering with medical treatment. *Id.* A prisoner's civil rights will only be abridged if "the indifference to his medical needs [is] substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.,* 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle,* 429 U.S. at 105-06).

A prison official acts with deliberate indifference only if the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). "If a prison official should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Toguchi v. Chung,* 391 F.3d 1051, 1057 (9th Cir. 2004) (quotation omitted). "Deliberate indifference is a high legal standard." *Id.* at 1060. Where a prisoner alleges delay in receiving medical treatment, he must show that the delay led to further harm. *See Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (citing *Estelle,* 429 U.S. at 106). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106.

## 1. Defendant Butcher

Defendant Butcher argues that Plaintiff's claim against him should be dismissed because Plaintiff fails to sufficiently allege that Butcher acted with the requisite deliberate

indifference to state a claim under §1983.[6]  (Doc. No. 48-1 at 2-3.)  Plaintiff's allegations against Defendant Butcher focus on Plaintiff's complaints of excruciating pain and Defendant Butcher's response thereto.  (FAC at 7-9.)  Plaintiff alleges that under Defendant Butcher's care at Alvarado, he complained of extreme pain and was only prescribed Motrin and Tylenol for pain control.  (*Id.*)  Plaintiff also alleges that Defendant Butcher disregarded the need for an operation, a soft hand splint for the finger, a sling to provide support and elevate the injury, and physical therapy.  (*Id.*)  Plaintiff alleges that the only medical care provided by Defendants Butcher and Otero was an inadequate splint applied for an inadequate amount of time.  (*Id.* at 9.)  Plaintiff supports his claim of deliberate indifference by alleging he needed further medical care after being discharged from Defendant Butcher's care, as he needed a different type of splint that immobilized two joints in his finger and was referred to an orthopedic surgeon.  (*Id.* at 9.)

A review of the exhibits offered by Plaintiff, however, does not support an inference that the actions taken by Defendant Butcher were deliberately indifferent to Plaintiff's medical needs. Exhibits F and I are the relevant exhibits to the allegations against Defendant Butcher. Exhibit F is a Pre-op History and Physical of Plaintiff completed by Defendant Butcher when admitting Plaintiff to Alvarado Hospital and states:

> **History of present illness**: X-ray shows a stellate fracture of the proximal phalanx which does not involve either articular surface.  The patient is admitted for acute care and further evaluation.
>
> **Plan:** The patient is admitted to the floor.  Will keep on IV antibiotics: Ancef. Will ask Jose Otero, MD, to evaluate status. The patient may need debridement, further care.  Will admit the patient on the floor.  Will continue Ancef IV.  Will ask Dr. Otero to evaluate and give medicine for pain control.

(Doc. No. 46-1, Ex. F.)  This exhibit does not support Plaintiff's position that Defendant Butcher in any way denied, delayed, or intentionally interfered with Plaintiff's medical care. As the admitting physician, Defendant Butcher recognized that Plaintiff had a fractured finger,

---

[6]In the Court's Report and Recommendation and Order Adopting the Report and Recommendation on Defendant Butcher's motion to dismiss Plaintiff's complaint, the Court found that Plaintiff sufficiently alleged Defendant Butcher acted under color of state law. (*See* Doc. Nos. 42 & 45.)  Defendant Butcher does not move to dismiss Plaintiff's FAC on this ground.

1    admitted him to the floor, provided him with antibiotics and recommended follow up care by

2    Dr. Otero to see if surgery was necessary.

3        Exhibit I, the Transfer Summary prepared by Dr. Butcher, notes that Dr. Otero

4    consulted with Plaintiff and felt that Plaintiff did not require surgical intervention. (*Id.*, Ex. I.)

5    Based on the surgical consultation, Defendant Butcher discharged Plaintiff with orders to not

6    partake in work detail for two weeks and with instructions for seven different medications,

7    including Tylenol No. 3 with Codeine for severe pain. (*Id.*, Ex. I.) Plaintiff's allegations and

8    the exhibits offered in support do not allow the Court to draw a reasonable inference that

9    Defendant Butcher "knew of and disregarded an excessive risk to inmate health or

10   safety."*Farmer,* 511 U.S. at 834. Accordingly, the Court finds that Plaintiff has not alleged

11   sufficient facts to support an inference that Defendant Butcher acted with deliberate

12   indifference in treating Plaintiff in violation of the Eighth Amendment. *See Iqbal,* 556 U.S.

13   ----, 129 S.Ct. at 1949. The Court recommends granting Defendant Butcher's motion to

14   dismiss Plaintiff's claim against him for inadequate medical care.

15       "A pro se litigant must be given leave to amend his or her complaint unless it is

16   absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll*

17   *v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987); *see also Lopez v. Smith*, 203 F.3d 1122, 1126-

18   30 (9th Cir. 2000). Plaintiff previously was given leave to amend his complaint against

19   Defendant Butcher and did so. Plaintiff's amended complaint fails to cure the deficiencies of

20   his claim for deliberate indifference against Defendant Butcher. Given the medical records

21   provided and Plaintiff's inability to cure the deficiencies of his initial complaint, the Court

22   recommends that Defendant Butcher's motion to dismiss Plaintiff's Eighth Amendment claim

23   against him be granted without leave to amend.

24       **2. Defendant Otero**

25       Defendant Otero similarly argues that Plaintiff's FAC fails to allege facts to support an

26   Eighth Amendment claim of deliberate indifference. (Doc. No. 51-1.) Plaintiff's allegations

27   against Defendant Otero focus on Plaintiff's complaints of pain at Alvarado Hospital, Otero's

28   response to the complaints, and a splint that was applied at Alvarado and later removed by

Otero at a follow-up appointment. (FAC at 7-12.)  Plaintiff alleges that he complained to Otero about being in excruciating pain, but was only prescribed Motrin and Tylenol.  (*Id.* at 8.)  Plaintiff alleges that the splint he received at Alvarado was inadequate as it only immobilized only one of the joints in his finger, the PIP joint.  (*Id.* at 8.)  Plaintiff alleges that at a follow-up appointment at Donovan, Dr. Silva ordered medical staff to re-do the splint to immobilize both the MCP and PIP joints and to apply a posterior short hand splint.  (*Id.* at 10.)  Plaintiff also alleges that the splint was left on for an inadequate amount of time, as Defendant Otero removed the splint only eighteen (18) days after the injury at a follow-up appointment on July 20, 2009.  (*Id.* at 10.)  Defendant Otero also ordered Plaintiff to continue working with his finger totally unprotected.  (*Id.* at 10.)  Plaintiff alleges Defendant Otero's medical care was deliberately indifferent because his finger was still fractured and grossly swollen when Defendant Otero removed the splint, and other medical doctors opined that he needed further medical care and referred him to an orthopedic surgeon.  (*Id.* at 9.)

A review of the exhibits offered by Plaintiff, however, does not support an inference that the actions taken by Defendant Otero were deliberately indifferent to Plaintiff's medical needs.  Exhibit G is the Consultation completed by Defendant Otero when treating Plaintiff at Alvarado.  The Consultation notes that Defendant Otero saw Plaintiff at the request of Dr. Butcher for an evaluation of a crush injury to the left hand with comminuted compound fracture and that Plaintiff was splinted in the emergency room.  (Doc. No. 46-1, Ex. G.)  The Consultation relates a history of the injury, an evaluation of the finger by Defendant Otero, and the medications Plaintiff received for the injury, including Motrin and Tylenol with codeine.  (*Id.*)  In his consultation, Defendant Otero recommends "continued splinting until the swelling decreases" and antibiotics.  (*Id.*)  Defendant Otero also noted that he would evaluate the X-rays and that Plaintiff "may need an open reduction."  (*Id.*)  This exhibit does not support Plaintiff's allegations that Defendant Otero in any way delayed, denied, or intentionally interfered with Plaintiff's medical care.  As a consulting physician, Defendant Otero evaluated Plaintiff's finger injury, recommended a course of treatment that involved splinting until the swelling decreased and antibiotics, and noted that upon evaluation of the X-rays, an open reduction of

the fracture may be necessary.

Exhibit I is the Transfer Summary prepared by Dr. Butcher when discharging Plaintiff from Alvardo. (*Id.*, Ex. I.)  As discussed above in relation to Dr. Butcher's care, the Transfer Summary notes that Dr. Otero consulted with Plaintiff, reviewed the X-rays, and felt that Plaintiff did not require surgical intervention. (*Id.*, Ex. I.)  Based on the surgical consultation, Defendant Butcher discharged Plaintiff with orders to not partake in work detail for two weeks and with instructions for seven different medications, including Tylenol No. 3 with Codeine for severe pain. (*Id.*, Ex. I.)  Plaintiff was also instructed to follow-up with Defendant Otero in 7 to 10 days and to call the office to set an appointment. (*Id.*, Ex. I.)

Exhibit N are the notes from Dr. Sedighi's July 30, 2009 examination of Plaintiff's finger at Donovan. (*Id.*, Ex. N.)  Dr. Sedighi discusses Plaintiff's July 20, 2009 follow-up appointment with Defendant Otero. (*Id.*, Ex. N.)  At his July 20 follow-up appointment, Defendant Otero removed Plaintiff's splint and instructed Plaintiff to massage his finger in warm water and to work with the range of motion of his finger. (*Id.*, Ex. N.)  Seven days before Defendant Otero's follow-up visit, Dr. Silva extended Plaintiff on his same course of pain medication he was prescribed at Alvarado, as he prescribed Tylenol No. 3 for ten more days and Ibuprofen (Motrin) for thirty days. (*Id.*, Ex. K.)  Therefore, Plaintiff was receiving pain medication at the time of Defendant Otero's follow-up visit with Plaintiff.  Plaintiff's health care services request form submitted on July 24, 2009 following Defendant Otero's visit does not mention that Defendant Otero failed to address Plaintiff's complaints of pain. (*Id.*, Ex. M.)

Plaintiff's allegations and the exhibits offered in support do not allow the Court to draw a reasonable inference that Defendant Otero "knew of and disregarded an excessive risk to inmate health or safety," as Defendant Otero evaluated Plaintiff's finger, felt that surgery was not necessary, treated Plaintiff's complaints of pain with Motrin and Tylenol with codeine, and provided follow-up care instructing Plaintiff to work on his range of motion. *Farmer,* 511 U.S. at 834.  Accordingly, the Court finds that Plaintiff has not alleged sufficient facts to support an inference that Defendant Otero acted with deliberate indifference in treating Plaintiff in

violation of the Eighth Amendment. *See Iqbal,* 556 U.S. ----, 129 S.Ct. at 1949. The Court recommends granting Defendant Otero's motion to dismiss Plaintiff's claim against him for inadequate medical care.

Although Plaintiff filed a FAC, he did so in response to the Court's dismissal of his claim against Defendant Butcher with leave to amend. (*See* Doc. Nos. 42 & 45.) In its previous dismissal, the Court did not analyze Plaintiff's allegations against Defendant Otero nor any deficiencies of those allegations. *See Karim–Panahi*, 839 F.2d 623–24. Because it is not absolutely clear that the deficiencies of Plaintiff's allegations against Defendant Otero could not be cured by amendment, the Court recommends that Defendant Otero's motion to dismiss Plaintiff's Eighth Amendment claim against him be granted with leave to amend. *Lopez*, 203 F.3d at 1126-30. The Court notes that Plaintiff's allegation of negligence is not sufficient to satisfy this cause of action against Defendant Otero. *Estelle,* 429 U.S. at 106.

### 3. Defendant Smith

Defendant Smith moves to dismiss Plaintiff's FAC for failing to allege facts to support am Eighth Amendment claim of deliberate indifference to medical needs for his treatment of Plaintiff on August 24, 2009. (Doc. No. 50-1 at 11-14.) Plaintiff's allegations against Defendant Smith focus on a delay in being seen by Defendant Smith after other medical doctors at Donovan referred Plaintiff to see an orthopedic surgeon, as well as the treatment Defendant Smith provided. (FAC at 13.) Plaintiff alleges that Defendant Smith was the only orthopedic surgeon employed at Donovan and did not examine Plaintiff until 54 days after his injury occurred. (*Id.*) Plaintiff alleges Defendant Smith stated during the appointment that the delay was attributable to overcrowding. (*Id.*) Plaintiff also alleges that Defendant Smith was deliberately indifferent by taking only 82 seconds to examine Plaintiff and by ignoring Plaintiff's complaints of extreme pain, nerve damage, and uncontrollable shaking in his finger. (*Id.*) Plaintiff alleges that he complained to Defendant Smith that he was not being provided any medication for the extreme pain he suffered on a daily basis. (*Id.*) According to Plaintiff, in response to these complaints, Defendant Smith shrugged his shoulders and instructed Plaintiff to continue soaking his finger in water. (*Id.*)

The Court finds that Plaintiff's FAC fails to allege facts, accepted as true, that state a claim against Defendant Smith for inadequate medical care that is plausible on its face. As for the alleged delay in treatment of Plaintiff based on prior referrals to the orthopedic surgeon, Plaintiff fails to allege any facts to support that Defendant Smith was actually aware of and deliberately ignored the referrals. *See Farmer,* 511 U.S. at 834. Even if Defendant Smith should have been aware of the referrals, without factual allegations supporting an inference that he was aware, an Eighth Amendment claim does not lie. *See Toguchi,* 391 F.3d at 1057. Although Plaintiff does allege that Defendant Smith explained he could not see him earlier because of overcrowding at the prison, this does not show that Defendant Smith was actually aware of the referrals prior to his appointment with Plaintiff, deliberately ignored the referrals, or was responsible for the overcrowding leading to a delay. Plaintiff also fails to allege facts to support an inference that any delay in treatment by Defendant Smith led to further harm. *See Shapely*, 766 F.2d at 407. Prior to his appointment with Defendant Smith, Plaintiff had been examined by Dr. Otero twice, who also reviewed X-rays and felt that surgery on Plaintiff's finger was not necessary.

Plaintiff's FAC also fails to plead facts to support an inference that Defendant Smith's care of Plaintiff was deliberately indifferent. The examination report notes that a recent X-ray showed the fractures to be completely healed, that Plaintiff still had stiffness in the finger and could only flex the PIP joint to 60 degrees, and that Defendant Smith instructed Plaintiff to continue working on vigorous range of motion exercises of the finger. (*Id.*) Defendant Smith felt no other treatment was necessary at that time and advised Plaintiff that it would take a fair amount of time to hopefully regain full range of motion in his finger. (*Id.*) The report shows that Defendant Smith examined X-rays, examined Plaintiff's finger, considered the stiffness in his finger, and concluded that Plaintiff needed to work on range of motion and did not need surgery or any other treatment. Defendant Smith's recommendation for Plaintiff to work on range of motion exercises himself instead of recommending physical therapy does not amount to deliberate indifference and is consistent with Dr. Otero's recommendation. A difference of opinion between medical professionals concerning the appropriate course of inmate treatment

or care is not enough, by itself, to support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  Nor does a difference of opinion between the prisoner and his doctors constitute deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

As for Plaintiff's complaints of pain, the medical records attached to Plaintiff's FAC show that he did receive pain medication from his primary care physicians and was referred to Defendant Smith for a surgical consultation.  Morever, Defendant Smith's report addresses Plaintiff's complaint of pain, as Defendant Smith notes that Plaintiff still had stiffness in his finger, but found that no other treatment besides range of motion exercises was necessary at the time.  The more likely and plausible explanation is not that Defendant Smith intentionally ignored Plaintiff's complaints of pain, but that Defendant Smith examined Plaintiff to determine if surgery was necessary, concluded that Plaintiff's fractures had healed, instructed Plaintiff to work on his range of motion, and did not feel any pain medication in addition to that received from Plaintiff's primary care physician was required.  *See Iqbal*,  556 U.S. ----, 129 S.Ct. at 1951.

Accordingly, the Court finds that Plaintiff has not alleged sufficient facts to support an inference that Defendant Smith acted with deliberate indifference in treating Plaintiff in violation of the Eighth Amendment.  *See id.* at 1949.  The Court recommends granting Defendant Smith's motion to dismiss Plaintiff's claim against him for inadequate medical care. The Court, as with Defendant Otero, did not analyze Plaintiff's allegations against Defendant Smith nor any deficiencies of those allegations in its previous dismissal of Plaintiff's claim against Defendant Butcher.  *See Karim–Panahi*, 839 F.2d 623–24.  Because it is not absolutely clear that the deficiencies of Plaintiff's allegations against Defendant Smith could not be cured by amendment, the Court recommends that Defendant Smith's motion to dismiss Plaintiff's Eighth Amendment claim against him be granted with leave to amend.  *Lopez*, 203 F.3d at 1126-30.  The Court notes that Plaintiff's allegation of negligence is not sufficient to satisfy this cause of action against Defendant Otero. *Estelle,* 429 U.S. at 106.

/ / /

**C.  Injunctive Relief**

In his FAC, Plaintiff seeks injunctive relief, "preventing defendant(s): from further violating plaintiff's Eighth Amendment right to be free from cruel and unusual punishment as guaranteed by the United States Constitution.  Mr. Miller has a human right to safety and adequate medical care." (FAC at 16.)  Defendants LaMontagne and Smith move to dismiss Plaintiff's request for injunctive relief for failing to state a claim.  (Doc. No. 50-1 at 14.)  "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009).  The Court agrees with Defendants that Plaintiff fails to plead any facts suggesting an ongoing or prospective violation of his constitutional rights at the hands of Defendants and therefore recommends granting Defendants' motion to dismiss Plaintiff's claim for injunctive relief.

**D.  Punitive Damages**

Defendant Butcher moves to strike, pursuant to Fed. R. Civ. Pro. 12(b)(6), punitive damages from the FAC.  (Doc. No. 48-1 at 3-4.)  A party may make a motion pursuant to Rule 12(b)(6) to dismiss a claim for damages on the ground that such claims are precluded as a matter of law. *Whittlestone Inc. v. Handicraft Co.*, 618 F.3d 970, 974-75 (9th Cir. 2010). Defendant Butcher argues the Court should strike Plaintiff's request for punitive damages against him under Cal. Civ. Code § 3294(a), which is the California standard for recovery of punitive damages.  Section 3294(a) requires a showing by clear and convincing evidence that the defendant is guilty of oppression, fraud, or malice to recover punitive damages.  However, Plaintiff filed a complaint based on 42 U.S.C. § 1983, which is not a claim arising out of California state law.  Defendant has also failed to cite any controlling authority applying Cal. Civ. Code § 3294(a) to strike punitive damages in the context of a prisoner § 1983 suit. Punitive damages are available under §1983. *See, e.g.*, *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 17 (1991). The availability of punitive damages in a §1983 action against an individual

is governed by a different standard than Cal. Civ. Code §3294(a) provides.  *See Dubner v. City and County of San Francisco*, 266 F.3d 959, 969 (9th Cir. 2001).

In order to be entitled to punitive damages against Defendant Butcher in his individual capacity, Plaintiff would be required to establish that Defendant Butcher acted with an "evil motive" or demonstrated "reckless callous indifference" to his constitutional rights. *See Smith v. Wade*, 461 U.S. 30, 56 (1983).  Although the Court finds Defendant Butcher's reliance on California Civ. Code §3294(a) unpersuasive, the Court does find that Plaintiff fails to allege sufficient facts to support an inference that Defendant Butcher acted with the requisite evil motive or reckless indifference.   Therefore, the Court recommends granting Defendant Butcher's motion to dismiss punitive damages claimed against him.

### Conclusion and Recommendation

For the reasons stated above, the Court recommends:

1.   Defendant Butcher's Motion to Dismiss (Doc. No. 48) Plaintiff's Eighth Amendment claim against him for inadequate medical care and request for punitive damages be **GRANTED WITHOUT LEAVE TO AMEND;**

2.   Defendants LaMontagne and Smith's Motion to Dismiss (Doc. No. 50) be **GRANTED IN PART AND DENIED IN PART**.  The motion should be granted on Plaintiff's request for injunctive relief.  The motion should be granted with leave to amend as to Plaintiff's Eighth Amendment claim against Defendant Smith for inadequate medical care.  The motion should be denied as to Plaintiff's Eighth Amendment claim against Defendant LaMontange for violation of right to safety; and

3.   Defendant Otero's Motion to Dismiss (Doc. No. 51) Plaintiff's Eighth Amendment claim against him for inadequate medical care be **GRANTED WITH LEAVE TO AMEND**.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. 636(b)(1).

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IT IS HEREBY ORDERED** that no later than **February 10, 2012**, any party to this action may file written objections with the Court and serve a copy on all parties.   The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties within **14 days** of being served with the objections.

**IT IS SO ORDERED.**

DATED: January 23, 2012

**BERNARD G. SKOMAL**
United States Magistrate Judge